Can we hear next from the parties in Mirena MDL versus Bayer Healthcare? May it please the Court, my name is Jay Brakestone. I represent the plaintiffs' appellants in this MDL proceeding. I'd like to address with the Court what is, I believe, the pivotal question in the decisions below which is whether or not the admissions, whether the party admissions are sufficient to get to a jury on the question of general causation without being annexed to expert testimony. The district court below said that no, that's not the case because these weren't really admissions. This was a medical device case and the admissions of general causation required expert testimony to explain them to the jury. So what the district court did is it created a sort of super admission, an admission plus, that in a medical device case, one needs, if one has an admission as to general causation, one still needs expert testimony in order to ... I don't understand it that way. I thought the district judge thought that if you took the admission or what you were calling an admission, it was too ambiguous to support a jury finding of causation favorable to plaintiff. Now, if you'd had an expert, that might have gotten you over the line, but without an expert, the statement just couldn't bear the weight of a finding in your favor. Why is that error? Well, because an analysis of those admissions showed just the opposite. But they're not the same as an expert opinion, an admission which is elaborate and takes into account the scientific facts. These were statements, some of them have to be read by implication, that were made and nobody knows what these people were thinking at the time they made them or why they made them and what the circumstances are. Well, I know that's what it appears in defendant's brief and that's what the district court said, but that's not the case at all. There's no expert opinion on the part of those admissions. Those admissions do not purport to be expert opinions. The key factor, Your Honor, and this is from the decision at page 320, and I quote, Beyer and its experts opine that perforation can only occur in connection with the insertion of an IUD, although the perforation may be detected at a later time. That's the general causation issue. Now we turn to the experts. And the experts say as follows. This is from the record. They're not my experts. Excuse me. These are admissions from the record, Your Honor. They are party admissions. They would otherwise be, as we all know since evidence in law school, they are admissible against the party to prove any fact. Here are the admissions. They may be admissible, but are they sufficient? And that's the question. And I will get to that. But first, I want to take a look at the admissions because I think they really control how we look at this. And I'll just mention just some of those admissions. First, we have the admission of Dr. Jocola. And Dr. Jocola says, quote, of course, his words of course, properly inserted IUS can migrate by itself, quote, migrate by itself. Now remember what I just read. The question here in general causation was, can that happen? Now did it happen? Can it happen? The second one is from Perjo Salonen, who was the Morena project manager. And I'll read this quote completely. Quote, in some cases, the perforation occurs late and not associated with insertion procedure. Harkening back to the decision below, that is precisely the general causation question. And now I'll pick a third one, Your Honor. Chuck Walsh, he's the defendant's global product expert. Quote, migration into the abdomen, parenthetically, spontaneous perforation unrelated to insertion, end of parenthetical, can occur. Now, those three admissions are rather straightforward. And they don't require a doctor or a medical expert for a jury to understand that. Because what they say is that this Morena device, when it's inserted, can end up somewhere else, that is as complex as the admission is. Let me ask you about the, well, first of all, the complexity is not so much in, you know, can the device migrate outside the uterus? That's one way of looking at it. But the other thing is the question of whether there's an impact with the, with the chemical that's released by Morena. Whether the Morena is sharp enough to, to, to, to do this. Whether or not Morena is constructed in such a way that it could migrate. These are all, these, these are much more complex questions, it seems to me. And I don't know, it seems to me that every state in this country requires experts in an area like this. I mean, I, you know, the research that we've done, and that's been pointed out to us, is that expert testimony is required to prove causation in a, in a medical case of this sort. Well, again, your Honor, the key to your Honor's statement is at the end of this sort. Remember, the court below and the defendants have said that the question is, right? Whether Morena can migrate. This is general causation. General causation. Can it migrate? On its own. Spontane, excuse me, spontaneously. Now, these three admissions say it can. And a jury doesn't need an expert to understand that. And let me give your Honor an example. I'm not sure that, I mean, you tried mightily to get experts to testify to this as well, but they were, they were discounted and it's very hard to establish this. First of all, I think the plaintiff, doesn't the plaintiff have to show that there's no perforation on insertion in each case in order to, in order to prevail? Because if there's perforation on insertion, then, then you're removed from this, from this claim. And that would be specific causation, your Honor. Yeah. Talking about general causation now at this point in time. And the standard here, I think, is very clear. And it's actually, it's actually, your Honor's standard for Amorgianis is, is manifestly erroneous. Was this ruling below manifestly erroneous? And it was. And I'll give you an example, your Honor. Um, in a, in a case called Salem, the United States Supreme Court, Justice Brennan writing and talking about when experts are needed, uh, was dealing with a, an individual, um, only seven seconds left, your Honor, was dealing with an individual who was a lookout on the U.S. lines and Salem is cited by any number of courts. Uh, and the question was when he climbed up the crow's nest and he fell out of the crow's nest, it was a Jones Act case. The question for Justice Brennan in the court was, did the jury need an expert? Did it need an architectural maritime expert to understand that when he climbed up the crow's nest and he took a foot, there was no place to put the foot that he would fall? And Justice Brennan said, no. Um, in, in another recent, another recent case. Further away from, on its facts, uh, than the one you've just cited from this case, which has to do with, uh, the, uh, operation of an IUD, uh, in, in a medical situation and whether there can be a migration of the IUD outside of the uterus, uh, you know, I mean, we're talking about medical cases here. That's your Honor. The defendants say that the general causation question that the plaintiffs fail to carry the day on below and the court below says was whether or not you could have spontaneous migration and the defendants admit that you can. A jury doesn't need any expert to know that if you put it here and it ends up here and, and it has moved, that's it. Worse, but what you don't know is whether it was done on insertion or not. And that, and if it's done on insertion and, and, and you, you wouldn't know because you don't, these things aren't discoverable right away and that's a question, it should be two years later and then you find it, you find it outside of the uterus. That's a question, your Honor, if I might, of specific causation. That's not the question we have here. And the fact of the matter is that these admissions are so, are so completely direct and the defendants have said, these are snippets. You know, I can think of really two, two examples of snippets that mean an awful lot, three words, I love you, or in a criminal case, I did it. This is, these are snippets, but they are direct. They say it can occur. I, and I, and I submit your Honors that that's precisely all that the, that plaintiff needed here and he was given it, he was given to it by the best source in the world, the defendants. Thank you and may it please the court. My name is Lisa Blatt and I represent the Bayer defendants. Um, I could go straight to the admissions, but I would like to start with the Daubert ruling because I think it frames the case, uh, in terms of what exactly the theory of causation was. And I think when you look through sort of all the analytical flaws of the experts  it becomes increasingly, uh, incredulous and hard to believe that there was a treasure trove of company documents that could possibly, uh, reflect scientific reality, yet a single expert in the world could not reliably explain the basis. So the plaintiffs, this involves, you know, Judge Walker indicated familiarity with the, an IUD where in this case, the label quite clearly warns of the rare risk of perforation. So the plaintiffs were really backed into a corner here and had to thread a needle to come up with the causation theory or risks that the label didn't cover. And so that's why they came up with this theory of spontaneous uterine penance. It's only a three year windows. I understand it from the various labels, the history of the labels, because there was some warning apparently, uh, in the prior, in, in prior years, I don't have the years in mind, 2011 to 14 or something of that sort that, that there was a, uh, it was just seemed to be confined to, uh, uh, perforation upon insertion. So none of the labels and no, you know, no medical literature and no, um, peer reviewed study mentions their theory, which is, um, that a Mirena without any injury, whether before, during, after insertion can by its own force, um, hop through all the layers of a woman's uterus. And that is their theory. We don't have a theory of causation. It is their burden to show it. And their theory was to try to get something the label didn't mention. And the problem they had was that, you know, the two medical treatises rejected it and said it wasn't possible. There was no peer reviewed study and there was no published journal. And so it wasn't surprising that the experts failed all or almost all of the litany after litany, uh, of analytical gaps between their, uh, methodologies and, uh, sources and data they relied on. And so when you get to the notion of these purported admissions, um, the two of which he relied on heavily were in a, an unbelievably dense email of, you know, gazillions of employees, um, talking about case reports and which is so ironic that, you know, case reports are unreliable for an expert. So an expert himself can't rely on a case report, which was those emails. So it would be the height of all irony and just perversion to say that, okay, well, all my experts got excluded, but can I still rely on something else? It's unreliable. Um, the other thing I just want to talk to about the admissions that hasn't come up here and, and that is sort of the federalism concerns, you know, this is an eerie case and you have a case where it's undisputed that all 50 states require expert testimony in medical devices and in drug cases. By the way, could you just enlighten for me how a, a, a, a, an appellate court, a federal appellate court arrives at this conclusion and what the, what, what a court could say about the expert, uh, uh, requirements when you've got 50 different states and the rules are somewhat different in each state. They're, they're, they all require expert testimony, but, but there, there are nuances. Yes. And so, so what is the rule that we would opine? So, I mean, it's just a federal court sitting in diversity. So you're purporting to try to . . . We're just, are we just dealing with the test cases that are before us? No, no, because on the, um, these are experts that cover all 1200 or 1300 cases. So, um, but let me just be clear where, where this, why this is easy. So they don't have a single case where an admission has ever substituted for expert testimony in no state, no, uh, no, even, you know, jurisdiction, much less a case where the experts were held to be unreliable. And so this court would have to sort of expand, um, state law in any one of the number of 50 states. And because it's at MDL, if you reverse, you're expanding state law in all 50 states in one swoop. So it would be an extraordinary thing, which is what I think motivated the district court is the judge was looking at 50 states, had, had already come to a decision where the case was following the Daubert ruling where the experts were excluded, and I think there was a lot of common sense to the judge's sort of reasoning is I'm having a hard time thinking how a company, this is not some, you know, smoking gun document where hidden data and research was found. These, this is the FDA label. It's not like this was hiding in, you know, it was hiding, it was hiding in plain sight. So it's just hard to see how this could be admitting to something that there's not a single expert that could explain. And I think, you know, when you go through all the analytical gaps and how at each stage the expert was either had strange methodology in one case was relying on pig hearts, um, and taping a Mirena to a metal block. Um, and then relying on studies that all of the experts suffered from the flaw of their notion is that the uterus contracts and that that's kind of pushed it through it. And then they all ignored that the hormone that the Mirena releases, uh, decreases contractions. Your position would be that, uh, a court, an appeals court would say expertise is required, uh, and there was insufficient expertise shown here. Uh, Daubert was flunked. Um, uh, and that's, that's, that's enough as opposed to what the actual, um, uh, uh, I guess my problem was figuring out how to synthesize the state law in a way, in a, in a rule. Yeah. So I would do it this way. It's a state substantive law requirement that expert testimony is required. You would lose in all 50 States. It's just not disputed. And the question is, is this court, can this court sort of go beyond that where it's clear the case is over and say, well, there might be an exception in one of all 50 States for an admission. And if so, under what circumstances you're saying is on the facts that have been presented here, um, the, the plaintiff flunks at the very threshold level, right? Right. The, at the threshold level, you don't have to get into the details of whatever, no, not only they have a novel theory of causation. They had a novel theory of getting around that they had no expert proof. I mean, product liability cases from, you know, as long as at least I've been practicing law have all been about experts. And again, the notion that if there had been some sort of admission and an expert could have looked at it and said, you know, I can't, uh, I still can't come up with a reliable theory. They are misstating, you know, their theory of causation. Their theory is that Mirena without any injury whatsoever to the uterus, just all on its own, when it sits in the, uh, in a woman's uterus, it spontaneously moves and all the admissions they point to are talking about a situation where you could have perforation that comes much after insertion, but at least there's some injury, whether that's a neck or some kind of thing, either from the, the sounding device, the inserter or the Mirena itself. So don't have to decide really in this case, whether there's any admission that could possibly get them to a jury. We just have to decide that the district court, um, correctly concluded that these admissions were not sufficiently clear to do that. Isn't that right? That's absolutely correct. The court said, well, I'm not going to for the court said, I'm not foreclosing that there might be an admission that could substitute. And so the court didn't go as far as I think I'm arguing here and said, but I'm not going to let something ambiguous because that would at least exacerbate some of the concerns I'm having with the state law. And so it would at least have to be clear, concrete and detailed proof of because the jury would be speculating. Not all, not only about what the scientific basis was, but whether the party even believed it. If I understand your position, because your adversary is going to get up in a moment, at least with respect to the emails that rely on reports, the adverse reports, um, the district court didn't think that it was clear enough that those were admissions by the authors of the emails, as opposed to just references to the fact that there are reports out there saying that, is that your position or do you have something beyond that, that we should be? Yes, that it's, it's the, well, I'm kind of convinced from reading it that they are case reports because there's the, throughout it, it's talking about case reports. Um, second, I don't think that it's admission anyway, because it is consistent with the notion that you could have an injury, um, at insertion, but a perforation doesn't happen until later. Now the PowerPoint one, which is, you know, they, they want to read it in snippets, sorry about the word snippet, but it's even more kind of crazy ambiguous because it says migration into the abdomen, parenthetical, spontaneous perforation, unrelated to insertion, close parenthetical can occur. And that's not, I love you. That's just not, I love you. There's a lot. I, I don't think, I don't think so. I can't tell what that means. It's kind of, it mixes up the parenthetical, but whatever it is, it's not their theory of causation, which is that you can't, there's no injury whatsoever, that it's just a, just spontaneous, uh, motion. There are a number of questions we would ask that the judgment be, both judgment of both decisions be affirmed. Thank you very much. Break's down. I don't want to disappoint your honor and I have nothing to say on reply. Um, but the fact of the matter is that, um, we didn't, uh, we didn't, uh, come upon these admissions out of the clear blue, Dr. Joplin's admission was made in 2004. So was, so was Salonen's, Walsh's is 2008. So if these admissions are so meaningless, it seems much ado about nothing. The fact is they're not meaningless. And this court, and I think we have to say this at this point, that this court, when it views admissibility of something of an admission, uh, since it's, uh, I don't think it's discretionary. I think it's de novo. So I think the court has the right to take a fresh look. Let me be sure I understand you. In the Walsh email, what the district judge said was that they referenced these reports and whether or not they should put mention of it on the label with the caveat that they may have involved injury at the time of insertion. That suggests that the author is not convinced that these kind of, um, incidents can happen without an injury on insertion or am I misunderstanding something here? Well, the coy thing for me to say, your honor, is that I don't know. I'm not a try. If the, if the author, um, is, uh, is commenting on or the recommendation the author is making is to reference, uh, the possibility of injury on insertion. But your honor, I'm not the trier of fact that I don't have to judge the credibility of that statement. How does anyone conclude that an author who says, these are the reports, should we reference them along with a caveat? How does anyone say that's an admission that there's injury, um, that there's spontaneous, uh, migration without injury? Well, I think what your honor, your honor is mixing two things. It's an admission. What it admits other than, and I quote again, migration into the abdomen, spontaneous perforation, unrelated to insertion can occur. That's the admission. I was saying it was an admission. I'm saying it, I recognize it's a state statement by a party opponent, but it doesn't admit what you're saying. Um, you want to offer it for, well, no, I want to offer it specifically for that because the defendants took the position, the court agreed that there was no proof of general causation. This statement says precisely that now it's credibility. Acknowledges there are reports. It doesn't admit anything itself. It acknowledges that there are reports. If you, if you couldn't get the reports in, I don't know how you get the, um, party opponents acknowledgement that there are reports. That's not a pertinent admission. The admission your honor is, is what, what the defendants are trying to do is something they can easily do a trial, not an emotion for summary judgment. What they're trying to do is turn around and put in all the material that led into that admission now to, to deflect the admission, and there was a time for that on a motion for summary judgment. This is not the time. Um, this also was not the time for oral argument because you're in negotiations. What did, why don't you tell us a little bit about the status of things? Um, we, on the chance that things didn't work out, we wanted to make sure we what is the status of the case? Um, your honor, I I'll, I'll speak a bit about it. And, um, my colleague, we just want to know, do you expect to get to the court in two weeks in three weeks with whatever resolution you've got? What, what kind of a timetable are we working on here? I think the, the, the timetable is, is one that involves two situations. There are 1200 plaintiffs in this MDL, but the situation is such that it will also, um, take care of MDLs in a New Jersey where there are 2000 plaintiffs pending and hundreds of cases in California in the circuit court. Um, I think that, and I've been told, you correct me if I'm incorrect, that I've been told that, uh, if this case were put over for a period of six months, we'd have everybody signed on and wrapped up. I mean, the, the, um, the agreements have been signed. Obviously there's a mechanics to this. And, um, I'm not sure we're going to put it over for six months, but I'm glad to know that that's what we're talking about. We're not talking about a few weeks. Okay. We will, we'll take the matter under advisement. Thank you very much. Um,